**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
*Southern Division*

|                                          |     |                        |
| ---------------------------------------- | --- | ---------------------- |
|                                          | *   |                        |
| **TEXAS STAR NUT AND FOOD CO., INC.,**   |     |                        |
|                                          | *   |                        |
|    **Plaintiff,**         |     |                        |
| **v.**                                   | *   | **Case No.: GJH-21-2564** |
|                                          |     |                        |
| **TRUIST BANK**                          | *   |                        |
|                                          |     |                        |
| **and**                                  | *   |                        |
|                                          |     |                        |
| **JOHN DOE,**                            | *   |                        |
|                                          |     |                        |
|    **Defendants.**        | *   |                        |

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

**MEMORANDUM OPINION**

Plaintiff Texas Star and Nut Food Co., Inc. ("Texas Star") brings this civil action against Defendant Truist Bank ("Truist"), alleging the aiding and abetting of a hacker in a wire fraud scheme and subsequent unjust enrichment. ECF No. 8. Plaintiff seeks compensatory damages of $428,490.00, pre- and post-judgment interest, punitive damages of $1,285,470.00, and all attorneys' fees and costs. *Id.* at 8.[1]

Pending before the Court is Defendant Truist's Motion to Dismiss Counts 3 and 4 of the Amended Complaint, ECF No. 12. No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2021). For the following reasons, the Motion is granted.

---

[1] Pin cites to documents filed on the Court's electronic filing system (CM/ECF) refer to the page numbers generated by that system.

## I.      BACKGROUND[2]

On August 26, 2021, Texas Star filed this matter in Circuit Court for Montgomery County, Maryland, against Truist, on claims of (1) aiding and abetting and (2) unjust enrichment. *See* ECF No. 1 ¶ 1; ECF. No. 3. On October 6, 2021, Truist filed a Notice of Removal on the basis of this Court's diversity jurisdiction, less than thirty days after being served with a copy of the Complaint and Summons.[3] ECF No. 7 ¶ 3. On October 12, 2021, Truist filed a Motion to Dismiss. ECF No. 5. On October 26, 2021, Texas Star filed an Amended Complaint. ECF No. 8.

Plaintiff's claims arise out of the creation of a fraudulent bank account with Truist by an unknown hacker, which led to two fraudulent wire transfers to the hacker by Texas Star, totaling $428,490.00.[4] *Id.* According to the Amended Complaint, on or around September 24, 2020, the hacker infiltrated an email conversation between a Texas Star employee and an outside vendor of the Plaintiff, SNRA Commodities, Inc. ("SNRA"). *Id.* ¶ 17. The hacker assumed the identities of two SNRA employees known to Texas Star, under the guise of slightly altered email addresses. *See id.* ¶¶ 18–19 (showing that "eddie@snracommodities.com" became "edie@snracommodlties.com" and "rochelle@snracommodities.com" became rochelle@snracommodlties.com.); *see also* ECF No. 8-1.

Unaware of the scheme, an employee of Texas Star began communicating with the hacker, who ultimately requested that a subsequent payment to SNRA be made via a wire transfer. ECF No. 8 ¶¶ 20–24; *see also* ECF No. 8-1. On October 2, 2020, Texas Star called its

---

[2] Unless stated otherwise, all facts are taken from Plaintiff's Amended Complaint or documents attached to and relied upon in the Complaint and are accepted as true. *See E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011).

[3] Truist asserts that it received the Complaint and Summons on September 7, 2021, and this issue is not in dispute.

[4] Texas Star brings Counts 1 and 2 in the Amended Complaint for intentional misrepresentation and unjust enrichment against "John Doe," the unidentified hacker or hackers who perpetrated the fraud. *See* ECF No. 8 ¶ 5.

bank to initiate two wires to the hacker's bank account at Truist, on the belief that the payments would be issued to SNRA. ECF No. 8 ¶¶ 25–26. On October 28, 2020, SNRA contacted Texas Star to notify them that they were in arrears and that the earlier wire transfers had never been received by the company. *Id.* ¶ 34.

Texas Star argues that the hacker "presented false identification" to open an account online and that Truist "knowingly failed to follow [its] validation procedures which likely would have detected the fraud." *Id.* ¶ 11–13. Texas Star contends that Truist "knew that the identification used to open the account was false, or alternatively, failed to review the false identification," despite approving the opening of the account. *Id.* ¶¶ 14–15. Additionally, Texas Star asserts that wire instructions for the two fraudulent transfers showed that the intended beneficiary of the wires was SNRA, not the hacker, and thus, Truist had "actual knowledge" of the fraud. *Id.* ¶¶ 27–28. At the same time, Texas Star claims that Truist "knowingly failed" to identify that the beneficiary in the wire instructions was different from the name of the bank account holder, as part of its review process. *Id.* ¶ 30. Further, Texas Star contends that Truist allowed the transaction to proceed "despite allegedly conducting the required review of the wire transaction pursuant to Federal required 'Know Your Customer' policies." *Id.* ¶ 29.

On November 9, 2021, Truist filed its Motion to Dismiss for Failure to State a Claim on Counts 3 and 4 of the Amended Complaint. ECF No. 12. On November 23, 2021, Texas Star responded, ECF No. 13, and on December 7, 2021, Truist filed a reply, ECF No. 14.

## II.    STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) permits a defendant to present a motion to dismiss for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A complaint will survive a motion to dismiss if it contains "sufficient factual matter, accepted as

true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Courts must consider a motion to dismiss according to the pleading requirements of Rule 8(a)(2), which demand "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed R. Civ. P. 8(a)(2); *see Twombly*, 550 U.S. at 554–55. Further, a well-pleaded complaint may proceed even if the "actual proof of those facts is improbable" and "recovery is very remote and unlikely," *Twombly*, 550 U.S. at 556 (internal quotations and citation omitted); however, the complaint must still include a "'showing,' rather than a blanket assertion, of entitlement to relief." *Id.* at 555 n.3. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678; *see also Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 258 (4th Cir. 2009).

## III.   DISCUSSION

Plaintiff alleges two causes of action against Truist: (1) the bank aided and abetted the hacker in the fraud perpetrated against Texas Star; and (2) the bank has been unjustly enriched due to the fraud. ECF No. 8. Defendant Truist argues in its Memorandum of Law in support of its Motion to Dismiss that Texas Star's claims are preempted by Article 4A of the Maryland Uniform Commercial Code ("UCC"). ECF No. 12-1. Additionally, Truist argues that Texas Star's common law claims fail because Plaintiff has not pleaded sufficient facts to make either claim plausible. *Id.* Because Plaintiff's common law claims may not proceed if they are preempted by the UCC, the Court will address this issue first.

### A. UCC Article 4A

Truist argues that Texas Star's claims are preempted by Article 4A of the UCC as adopted in Maryland, which governs funds transfers. ECF No. 12-1 at 7–12; *see also* Md. Code Ann., Com. Law § 4A-101 et seq.[5]

The Maryland UCC provides as follows:

"Funds transfer" means the series of transactions, beginning with the originator's payment order, made for the purpose of making payment to the beneficiary of the order. The term includes any payment order issued by the originator's bank or by an intermediary bank intended to carry out the originator's payment order. A funds transfer is completed by acceptance by the beneficiary's bank of a payment order for the benefit of the beneficiary of the originator's payment order.

Md. Code Ann., Com. Law § 4A-104(1).

Historically, the UCC was designed in part to "make uniform the law among the various jurisdictions." Md. Code Ann., Com. Law § 1-103(3). Accordingly, "when the Code and common law both provide a means of recovery, the Code should displace the common law, because variations in the common law among states destroy the uniformity in commercial transactions sought to be accomplished by the [UCC]." *Equitable Life Assur. Soc. of the U.S. v. Okey*, 812 F.2d 906, 909 (4th Cir. 1987) (citation omitted); *see Silver v. Wells Fargo Bank, N.A.*, No. CV MJG-16-382, 2017 WL 3621235, at *3 (D. Md. Aug. 23, 2017); *Advance Dental Care, Inc. v. SunTrust Bank*, 816 F. Supp. 2d 268, 270–71 (D. Md. 2011).

Thus, Article 4A generally preempts common law claims involving funds transfers. *See Mar-Chek, Inc. v. Mfrs. & Traders Co.*, 2019 WL 3067501, at *6 (D. Md. July 11, 2019). And, indeed, Texas Star admits as much in its Response to Truist's Motion to Dismiss. ECF No. 13 at 5–6 ("Plaintiff's action against Truist is not for its role in receiving a wire transfer from the

---

[5] Because the Court is exercising its diversity jurisdiction, it is required to apply the substantive law of the state in which it sits. *Tobacco Tech., Inc. v. Taiga Int'l N.V.*, 388 F. App'x 362, 368 (4th Cir. 2010).

Plaintiff's bank—Plaintiff concedes that, if that were the case, Title 4A of the UCC would displace the claim and would provide protection to Truist.").[6]

Texas Star argues, however, that Truist's actions in setting up and managing a bank account for the hacker are *not* preempted as such. ECF No. 13 at 6–8. There is support for the view that "claims regarding the opening and management of fake accounts will not be preempted" by the UCC's Article 4A. *Nirav Ingredients, Inc. v. Wells Fargo Bank, N.A.*, 516 F. Supp. 3d 535, 540 (W.D.N.C. 2021), *aff'd*, No. 21-1893, 2022 WL 3334626 (4th Cir. Aug. 12, 2022) (per curiam) (citing *Eisenberg v. Wachovia Bank*, N.A., 301 F.3d 220, 224 (4th Cir. 2002)).

The matter in *Nirav* involved a sadly similar tale to the one here. Plaintiffs sought damages from Wells Fargo Bank, N.A. ("Wells Fargo"), after an unknown hacker opened a bank account with Wells Fargo and then induced one of the plaintiffs with a fake email to wire a substantial sum to the account, rather than to its intended beneficiary, the second plaintiff. *Id.* at 537–38. While any claims arising out of the wire transfer were dismissed as preempted under the North Carolina UCC, plaintiffs' state-law negligence claims involving the opening and use of the fraudulent account survived, as falling outside of Article 4A's provisions. *Id.* at 540. Courts in other jurisdictions have decided likewise. *See Shecter Landscaping, Inc. v. JPMorgan Chase Bank NA*, No. 22-10106, 2022 WL 2704843, at *3 (E.D. Mich. July 12, 2022); *S&S Worldwide, Inc. v. Wells Fargo Bank*, 509 F. Supp. 3d 1154, 1162 (N.D. Cal. 2020); *Fragale v. Wells Fargo Bank, N.A.*, 480 F. Supp. 3d 653, 660 (E.D. Pa. 2020). *But see Zeal Glob. Servs. Priv. Ltd. v. SunTrust Bank*, 508 F. Supp. 3d 1303, 1310–11 (N.D. Ga. 2020).

---

[6] Because Texas Star has conceded this point, the Court will not address Truist's argument that Plaintiff lacks standing to sue under the UCC.

The Court here will follow these decisions. Thus, Texas Star's common law allegations, to the extent they stem from the opening and management of the hacker's bank account, are not preempted by Article 4A of the UCC.

**B. Common Law Claims**

**1. Aiding and Abetting**

Turning to the merits of Texas Star's common law claims, Texas Star first alleges that Truist aided and abetted the hacker in his intentional misrepresentation. Under Maryland law, "[a] person may be held liable as a principal ... if he, by any means (words, signs, or motions) encouraged, incited, aided or abetted the act of the direct perpetrator of the tort." *Alleco Inc. v. Harry & Jeanette Weinberg Foundation, Inc.*, 340 Md. 176, 199 (1995). Thus, to bring a claim for aiding and abetting, a plaintiff must show that (1) a primary actor committed a tortious act, (2) the defendant had knowledge of the act (2) and the defendant gave substantial assistance in support of that act. *See Lathan v. Sternberg*, No. 0988, 2015 WL 6125427, at *7 (Md. Ct. Spec. App. Sept. 30, 2015); *see also Al-Sabah v. World Bus. Lenders, LLC*, No. CV SAG-18-2958, 2020 WL 3868989, at *27 (D. Md. July 9, 2020).

Actual knowledge requires that the defendant "engage[ ] in assistive conduct that he would know would contribute to the happening of the tortious act." *Saadeh v. Saadeh, Inc.*, 150 Md. App. 305, 328 (2003). Put another way, the defendant must act "knowing that the [tortious act] would be the natural consequence of his conduct." *Id.*

As noted previously, to survive a motion to dismiss, a plaintiff must provide more than "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678. Courts must be able to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

7

Here, Texas Star claims the following: "Truist knew that John Doe presented false identification to open the Fraudulent Account that directly led to the financial loss," or, in the alternative, "Truist did not review the false identification presented by John Doe that directly led to the financial loss sustained by the Plaintiff." ECF No. 8 ¶¶ 52–53. Further, "Truist knew that the tortious act by John Doe would be a natural consequence of John Doe's conduct in fraudulently opening the Fraudulent Account." *Id.* ¶ 54. Truist also "aided and abetted John Doe's wrongful and tortious conduct and knowingly provided substantial assistance, aid, and encouragement in the commission of such conduct." *Id.* ¶ 57.

Without more, however, Texas Star has not alleged legally sufficient facts to show that Truist had actual knowledge of any tortious scheme by the hacker. While the Plaintiff "attempts to bridge the gap between actual known facts and [its] ultimate conclusion," the assertions contained in the Amended Complaint "amount to little more than an indication that the plaintiff has a 'feeling' that the defendant has committed some potential wrongdoing." *Lathan v. Sternberg*, No. 0988, 2015 WL 6125427, at *9 (Md. Ct. Spec. App. Sept. 30, 2015); *see also S&S Worldwide*, 509 F. Supp. 3d at 1166 (finding plaintiff's complaint for aiding and abetting "includes no facts" that the defendant bank "had actual knowledge" of a hacker's "scheme to trick" the plaintiff into wiring funds to the hacker's account).

Additionally, Plaintiff has not alleged facts to show that Truist "substantially assisted" the hacker. A bank is generally not liable for aiding and abetting fraudulent behavior when there is "no evidence" that the institution "was doing anything more than providing its usual banking services to a customer." *Rosner v. Bank of China*, 528 F. Supp. 2d 419, 427 (S.D.N.Y. 2007). As such, the "mere fact that participants in a fraudulent scheme use accounts at a bank to perpetrate it, without more, does not in and of itself rise to the level of substantial assistance." *Id.* (internal

8

quotations and citation omitted).[7] Here, Texas Star has not alleged facts that go beyond asserting that Truist provided "usual banking services to a customer."

Thus, Plaintiff has failed to sufficiently plead a claim that Truist aided and abetted the hacker in the scheme against Texas Star.

### 2. Unjust Enrichment

Texas Star also asserts that Truist has been unjustly enriched by its involvement in the hacker's scheme. Under Maryland law, to recover under a theory of unjust enrichment, a plaintiff must "demonstrate that the defendant received a benefit which equity requires the defendant to relinquish." *Hobbs v. St. Martin*, 320 F. Supp. 3d 748, 752 (D. Md. 2018). A claim for unjust enrichment requires that (1) a plaintiff confers a benefit upon a defendant; (2) the defendant knows or appreciates the benefit; and (3) the defendant retains the benefit under circumstances that are inequitable without the paying of value in return. *Benson v. State*, 389 Md. 615, 651–52 (2005). Nevertheless, the "standard approach" in Maryland and this District is for courts to dismiss an unjust enrichment claim if the plaintiff "has not stated a claim for tortious conduct." *Washington Cnty. Bd. of Educ. v. Mallinckrodt ARD, Inc.*, 431 F. Supp. 3d 698, 718 (D. Md. 2020) (collecting cases).

Here, Texas Star argues that Truist unjustly obtained and used the fraudulent funds in the hacker's account as part of its banking business and that Truist has unjustly retained those funds, to the extent any money remains in the hacker's account. ECF No. 8 at 7–8. However, as above, Plaintiff's threadbare assertions are not sufficient to state a claim for relief. Additionally, this

---

[7] Relatedly, under Maryland law, courts have found banks owe no duty of care to noncustomers "simply because the bank maintained [a] fraudulent account." *Al-Sabah*, 2020 WL 3868989, at \*17 (collecting cases); *see also Eisenberg*, 301 F.3d at 225 (holding that a bank does not owe a duty of care to a noncustomer absent a direct relationship).

allegation fails because the underlying conduct—aiding and abetting a tortious act—cannot stand

on the facts as pleaded.[8]

## IV.     CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss, ECF No. 12, is granted.

Plaintiff shall have 14 days to submit a Motion for Leave to Amend. A separate Order follows.

Date: <u>September 29,  2022</u>                     <u>___/s/_____</u>

                                                                     GEORGE J. HAZEL
                                                                     United States District Judge

---

[8] In its Response, Plaintiff requests leave to file a Second Amended Complaint if the Court determines that it should grant Truist's Motion to Dismiss. ECF No. 13 at 12. Defendant opposes the request. ECF No. 14 at 13. Pursuant to Federal Rule of Civil Procedure 15(a)(2), the Court will grant leave to amend, but only to the extent that Plaintiff is able to provide more specific factual allegations with respect to its claims, as required by *Iqbal*. Fed. R. Civ. P. 15(a)(2); *see Iqbal*, 556 U.S. at 678. Plaintiff has 14 days to file a Second Amended Complaint, or Counts 3 and 4 will be dismissed with prejudice. This submission must conform with all of the requirements of Local Rule 103.6.